IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | S U P E R S E D I N G |
| | ) | I N D I C T M E N T |
| v. | ) | |
| | ) | Criminal No. 3:14-cr-03 |
| AARON SCOTT JOHNSON; DEREK | ) | |
| MARTIN JOHNSON; and JOHNSON | ) | Violations:    18 U.S.C. §§ 371, |
| POTATO COMPANY | ) | 982(a)(2)(A), 1001, 1014, and 2 |

<u>COUNT ONE</u>

**Conspiracy to Commit Crimes Against the United States**

The Grand Jury Charges:

**<u>Introduction</u>**

I.      **Federal Crop Insurance**

The federal government provides crop insurance to farmers through a partnership between private insurance companies and the Risk Management Agency (RMA) of the United States Department of Agriculture (USDA).  This system that provides crop insurance policies to farmers is subsidized and reinsured by a government-owned corporation called the "Federal Crop Insurance Corporation" (FCIC).  The RMA administers and oversees all programs approved by the FCIC.  The RMA/FCIC does not provide insurance directly to farmers.  Rather, the RMA/FCIC uses private insurance companies to sell and service FCIC-approved Multi-Peril Crop Insurance (MPCI) policies.  The RMA/FCIC provides payments and reimbursements at every stage of the crop insurance process.  Specifically, the RMA/FCIC pays the private companies a subsidy to sell and service the MPCI policies, subsidizes the premiums themselves to

lower the costs for farmers/policyholders, and reimburses the insurance companies for the indemnity payments for crop losses made to the farmers/policyholders.

A.      General Provisions of the MPCI – Basic Provisions

The MPCI policy provides crop insurance coverage against unavoidable crop losses that are due to a naturally-occurring event.  Specifically, Section 12 of the Common Crop Insurance Policy, Basic Provisions, states in relevant part:

> **12.      Cause of Loss**
> **The insurance provided is against only unavoidable**
> **loss directly caused by specific causes of loss contained**
> **in the Crop Provisions.  All specified causes of Loss,…**
> **must be due to a naturally occurring event.  All other**
> **causes of Loss, including but not limited to the**
> **following, are NOT covered:**
>
> **(a)      Negligence, mismanagement, or wrongdoing by you,**
> **any member of your family or household, your**
> **tenants, or employees**
>
> **(b)      Failure to follow recognized good farming practices for**
> **the insured crop;**
>
> **. . . .**

B.      Northern Potato Crop Provisions

One optional endorsement available for MPCI coverage is the Northern Potato Crop Provisions.  This provides insurance coverage for potato growers in twenty-five states, including North Dakota.  Consistent with the Basic Provisions of the MPCI, which provisions are stated above, the Northern Potato Crop Provisions identify the unavoidable losses that result from a naturally occurring event.

C.     Insured Losses/Filing a Claim

When a properly insured crop is damaged by an event (insurable cause of loss) covered by the policy, the insured files a Notice of Loss with the insurance company. Upon receipt of the Notice of Loss, the insurance company assigns a loss adjuster to inspect the crop and determine the amount of loss.  Based on the information provided by the insured, the adjuster completes a Production Worksheet (claim form).  The insured must sign the Production Worksheet certifying the cause of loss (damage) to the insured crop; the amount of harvested and appraised production; and that all the information is true and complete and that a false statement may result in criminal penalties.

If any material fact is intentionally concealed or misrepresented on the policy or claim documents and the fraudulent documents are submitted to the insurance company for payments, the policy is void.  Therefore, when the policyholder, or anyone at his or her direction, intentionally conceals or misrepresents a material fact, the policyholder is not entitled to any payment and if the policyholder has already received payment, that payment must be returned or repaid.

D.     Claim Adjusting and Payment

After the insurance company's loss adjuster completes the Production Worksheet and the Production Worksheet is certified as correct by the insured, the claim is sent to the insurance company to calculate the amount of loss and indemnity payment.  After the amount of loss and indemnity payments are calculated, the insurance company pays an indemnity to the insured for the loss on the insured crop.  In turn, the insurance company

transmits the policy and claim data to FCIC, wherein the data is electronically verified and validated.  The FCIC then reimburses the insurance company for the crop insurance indemnity paid to the insured.

## II.      Federal Crop Disaster Program

Farm Service Agency (FSA) is another agency of the USDA.  The FSA was formerly known as Agricultural Stabilization Conservation Service (ASCS) and is a successor agency of Farmers Home Administration (FmHA).  At all relevant times herein, the FSA administered the farm programs of the Commodity Credit Corporation (CCC), which is a government owned corporation established by Congress to provide program benefits to farmers and oversee disbursement of program payments.  One of the benefit programs the FSA/CCC is the Crop Disaster Program, which subsidizes farming operations that experience crop loss from naturally-caused events.  As with the RMA, the FSA pays eligible farmers benefits based in part on the farmers' factual representations to the FSA.

Where crop loss disaster assistance is available, a farmer who experiences naturally-occurring disaster loss to a crop requests disaster assistance by filing a Crop Disaster Program Application.  In the Crop Disaster Program Application, the farmer provides information regarding the disaster, including:  date crop was planted; the disaster that caused the loss; and the date of the disaster.  In addition to the Disaster Program Application, the FSA relies on the loss data from the RMA/FCIC crop insurance files to calculate the FSA Crop Disaster payment for the farmer.  Upon processing the

4

claim, the FSA provides the farmer with the Crop Disaster payment.

**III.** **Johnson Potato Company**

At all times material to this Superseding Indictment, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, along with other family members, operated JOHNSON POTATO COMPANY (JOHNSON POTATO), a farming operation and partnership established to produce and sell fresh market potatoes.

Although JOHNSON POTATO is considered to be a farm partnership, for all times material to this Superseding Indictment, all members of the partnership, including but not limited to AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and other individual family members of JOHNSON POTATO, had their own MPCI policy written under their individual names.  During the relevant time period of this scheme, the JOHNSON POTATO operation only reported planting potatoes under the MPCI policies that were held by AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and other family members in the JOHNSON POTATO operation.

## The Conspiracy

From in or about 2002 through on or about January 20, 2010, and thereafter, in the District of North Dakota, and elsewhere,

AARON SCOTT JOHNSON;
DEREK MARTIN JOHNSON; and
JOHNSON POTATO COMPANY,

and others, both known and unknown to the grand jury, did knowingly and willfully combine, conspire, confederate, and agree together and with others, both known and

5

unknown to the grand jury, for the purpose of fraudulently obtaining money through crop insurance benefits from the insurance company and the United States, acting through agencies including the insurance company and RMA/FCIC.  To execute this fraud scheme and conspiracy, these individuals made false statements and reports for the purpose of influencing the actions of the USDA, acting through the RMA/FCIC.  In so doing, these individuals conspired to commit the following offenses against the United States:

1.      Title 18, United States Code, Section 1001, in part, prohibits, in any matter within the jurisdiction of a branch of the United States Government, knowingly and willfully – (a) falsifying, concealing, or covering up by any trick, scheme, or device a material fact; (b) making any materially false, fictitious, or fraudulent statement or representation; or (c) making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; and

2.      Title 18, United States Code, Section 1014, in part, prohibits knowingly making any false statement or report for the purpose of influencing in any way the action of the RMA/FCIC or a company that the RMA/FCIC reinsures or the Secretary of Agriculture, acting through the FmHA or successor agency (i.e., FSA).

**Manner and Means of the Conspiracy**

As part of the conspiracy, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, on their own behalf and acting on behalf of JOHNSON POTATO, conspired with each other, as well as others both known and unknown to the grand jury, to ensure

6

that JOHNSON POTATO sustained physical damages and losses to their potato crop.  As part of the conspiracy, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, on their own behalf and acting on behalf of JOHNSON POTATO, further conspired with each other, as well as others both known and unknown to the grand jury, to provide false and fictitious information for the purpose of influencing the RMA/FCIC.  This allowed AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and JOHNSON POTATO to receive indemnity payments on federally-reinsured MPCI potato policies that they were not otherwise entitled to receive.

AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and JOHNSON POTATO raised irrigated and non-irrigated potatoes in various locations throughout North Dakota, and elsewhere.  As part of their planting process, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, both personally and through the direction of others, added chemicals to the potato seeds to damage the seeds so that the potato plants would not produce potatoes.  Furthermore, after planting the potato seeds, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, both personally and through the direction of others, took additional steps including, but not limited to, damaging the plants with cultivators so that the potato plants would not produce potatoes.  After damaging and limiting their potato harvest,  AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, made claims under the production guarantee under the MPCA policy, falsely claiming that their lack of potato production was caused by natural causes rather than their own intentional

destructive conduct.

In addition to damaging the potato plants during the planting and growing stages, potatoes were also intentionally damaged after harvest.  Specifically, AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and JOHNSON POTATO raised and harvested irrigated potatoes near Cooperstown, North Dakota.  Following harvest, AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON stored the harvested potato crop, which they did not sell in the fresh market, in a leased warehouse space near Cooperstown, North Dakota.

While these potatoes were stored, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, applied chemicals, including, but not limited to, "Rid-X," a chemical designed for dissolving solid materials in septic systems, as well as already spoiled and frozen potatoes to their stored (and otherwise undamaged) potato crop, causing the stored potatoes to deteriorate and rot.  AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, placed one or more large portable heaters in the potato storage warehouse space to increase the air temperature to above 80-degrees to accelerate the spoilage process in the potatoes.

After causing the stored potatoes to rot, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, reported the loss to their insurance company, falsely claiming their potato crop

8

was lost due to naturally caused diseases.

While their loss claims were being adjusted by their insurance company, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, falsely concealed that they had intentionally and knowingly caused damage to their stored potato crop and affirmatively and falsely represented that their stored potatoes were damaged by natural causes.

As a result of the actions of AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and JOHNSON POTATO received indemnity payments totaling more than $2 million on the MPCA policies.

In addition to the insurance indemnity payments, AARON SCOTT JOHNSON, personally, and through the direction of others, also applied for federal crop disaster payments for the crop loss that he caused personally and through the direction of others. In this application for federal disaster payments, AARON SCOTT JOHNSON falsely reported that his stored potato crop was damaged because of naturally occurring disease, when in fact AARON SCOTT JOHNSON, and others at his direction, had intentionally and knowingly caused damage to the stored potato crop.

As a result of the actions of AARON SCOTT JOHNSON, personally, and through the direction of others, AARON SCOTT JOHNSON, personally, and through the direction of others, received disaster payments totaling $159,400.00.

**Overt Acts**

1.      In or about 2002 through in or about October 2006, and thereafter, AARON

SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the

direction of others, were actively engaged in operating JOHNSON POTATO, a farming

operation and partnership established to produce and sell fresh market potatoes;

2.      From in or about 2002 through 2005, AARON SCOTT JOHNSON and

DEREK MARTIN JOHNSON, personally, and through the direction of others, obtained

yearly coverage under MPCI policies written in their individual names, and the individual

names of family members, to insure the potato crops of JOHNSON POTATO;

3.      From in or about 2002 through 2005, AARON SCOTT JOHNSON and

DEREK MARTIN JOHNSON, personally, and through the direction of others, attempted

to and did apply "Rid-X," a chemical designed for dissolving solid materials in septic

systems, as well as other substances, directly to their potato seeds before planting to

damage the seeds to ensure a low potato harvest.

4.      From in or about 2002 through 2005, AARON SCOTT JOHNSON and

DEREK MARTIN JOHNSON, personally, and through the direction of others, took other

steps, including, but not limited to, damaging the potato plants while still in the ground to

ensure a low and damaged potato harvest.

5.      For the years 2002, 2003, 2004, and 2005, AARON SCOTT JOHNSON

and DEREK MARTIN JOHNSON, personally, and through the direction of others, and

on behalf of JOHNSON POTATO, submitted claims, and received over $2 million

10

dollars in payments, under MPCI policies by falsely claiming that their potato losses were cause only by natural causes;

6.      On or about March 20, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, obtained MPCI policies written in their individual names to insure their harvested potato crop;

7.      From in or about March 2006 through in or about October 2006, AARON SCOTT JOHNSON AND DEREK MARTIN JOHNSON, personally, and through the direction of others, planted and harvested an irrigated potato crop near Cooperstown, North Dakota.  Following the harvest, in or about October 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, stored their harvested potatoes in leased warehouse space near Cooperstown, North Dakota;

8.      From in or about October 2006 to on or about November 6, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, applied to their stored potatoes various chemicals, including but not limited to "Rid-X," as well as other similar chemicals.  There is not a legitimate farming purpose for adding these chemicals to stored potatoes.  Rather, these chemicals were intentionally added by AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, and others at their direction, for the purpose of spoiling or rotting the insured potatoes;

9.      From in or about October 2006 to on or about November 6, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the

direction of others, applied frozen and already-spoiled potatoes to their stored potatoes. There is not a legitimate farming reason to apply frozen and already-spoiled potatoes to stored potatoes. Rather, these spoiled and frozen potatoes were intentionally added by AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, and others at their direction, for the purpose of spoiling or rotting the insured potatoes;

10.     From in or about October 2006 to on or about November 6, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, applied heat to the potato storage facility to a temperature near or exceeding 80 degrees Fahrenheit. These actions were taken by AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, and others at their direction, for the purpose of accelerating the spoiling process for the insured potatoes;

11.     After causing the physical damage and deterioration to the stored and insured potatoes, on or about October 3, 2006, and on or about November 7, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, reported the loss to their insurance company, through Notices of Loss, claiming their potato crop was lost due to natural causes such as diseases;

12.     While their loss claims were being adjusted by their insurance company, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, falsely concealed that they had intentionally and knowingly caused damage to their stored potato crop and affirmatively and falsely

12

represented that their stored potatoes were damaged by natural causes;

13.     On or about December 13, 2006, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, under penalty of perjury, certified as correct in the Production Worksheet Summary and attached documents, that the losses to their potatoes were caused naturally;

14.     In or about January 2007, AARON SCOTT JOHNSON and DEREK MARTIN JOHNSON, personally, and through the direction of others, received indemnity payments totaling $680,399.00 for the loss of their 2006 potato crop;

15.     On or about December 10, 2007, AARON SCOTT JOHNSON, personally, and through the direction of others, submitted a Crop Disaster Program Application, for himself and his wife/spouse, to FSA for the loss of the aforementioned stored potato crop. In his application, AARON SCOTT JOHNSON claimed that the cause of the disaster was soft rot.  In so doing, AARON SCOTT JOHNSON falsely concealed that he, and others at his direction, had intentionally and knowingly caused damage to the stored potato crop and affirmatively and falsely represented that the stored potatoes were damaged by natural causes;

16.     On or about January 25, 2008, and on or about February 4, 2008, AARON SCOTT JOHNSON, personally, and through the direction of others, received disaster payments totaling $159,400 for the loss of the 2006 potato crop;

17.     On or about May 5, 2009, AARON SCOTT JOHNSON, for the purpose of furthering and concealing his illegal scheme, falsely claimed that his 2006 potato crop

13

was not intentionally damaged in any way by himself or anyone else at his direction;

18.    On or about May 5, 2009, DEREK MARTIN JOHNSON, for the purpose of furthering and concealing his illegal scheme, falsely claimed that his 2006 potato crop was not intentionally damaged in any way by himself or anyone else at his direction; and

19.    On or about January 20, 2010, AARON SCOTT JOHNSON, for the purpose of furthering and concealing his illegal scheme, falsely claimed that his 2006 potato crop was not intentionally damaged in any way by himself or anyone else at his direction;

In violation of Title 18, United States Code, Section 371.

<u>COUNT TWO</u>

**False Statement to Influence the United States Department of Agriculture - RMA**

The Grand Jury Further Charges:

1.    The Grand Jury realleges and incorporates by reference the allegations of Count One of this Superseding Indictment.

2.    Beginning on or about October 3, 2006, and continuing until on or about May 5, 2009, in the District of North Dakota, and elsewhere,

AARON SCOTT JOHNSON;
DEREK MARTIN JOHNSON; and
JOHNSON POTATO COMPANY

knowingly made and caused to be made material false statements for the purpose of influencing the action of the insurance company and the United States Department of Agriculture, acting through the Risk Management Agency/Federal Crop Insurance Corporation (RMA/FCIC), in connection with the payment of crop insurance benefits; to wit, AARON SCOTT JOHNSON, DEREK MARTIN JOHNSON, and JOHNSON POTATO COMPANY falsely represented, and caused another to falsely represent, that their stored 2006 potato crop was damaged by natural causes when they intentionally caused the damage to their stored potato crop;

In violation of Title 18, United States Code, Sections 1014 and 2.

15

<u>COUNT THREE</u>

**False Statement to Influence the United States Department of Agriculture - FSA**

The Grand Jury Further Charges:

1.      The Grand Jury realleges and incorporates by reference the allegations of Count One of this Superseding Indictment.

2.      On or about November 7, 2006, and November 29, 2007, and continuing to on or about May 5, 2009, in the District of North Dakota, and elsewhere,

AARON SCOTT JOHNSON

knowingly made and caused to be made material false statements for the purpose of influencing the United States Department of Agriculture, acting through the Farm Service Agency (FSA), in connection with the payment of disaster benefits; to wit, AARON SCOTT JOHNSON falsely represented, and caused another to falsely represent, that the stored 2006 potato crop was damaged by natural causes when he, and others at his direction, intentionally caused the damage to the stored potato crop;

In violation of Title 18, United States Code, Sections 1014 and 2.

16

<u>COUNT FOUR</u>

**False Statement to Law Enforcement**

The Grand Jury Further Charges:

1.      The Grand Jury realleges and incorporates by reference the allegations of Count One of this Superseding Indictment.

2.      On or about May 5, 2009, in the District of North Dakota, and elsewhere, in a matter within the jurisdiction of the RMA, and the FSA, agencies of the United States,

AARON SCOTT JOHNSON

knowingly made and caused to be made a material false, fictitious, and fraudulent statement and representation, to wit:  AARON SCOTT JOHNSON falsely represented that his stored 2006 potato crop was damaged by natural causes and denied that he intentionally damaged his 2006 potato crop;

In violation of Title 18, United States Code, Section 1001.

17

<u>COUNT FIVE</u>

**False Statement to Law Enforcement**

The Grand Jury Further Charges:

      1.      The Grand Jury realleges and incorporates by reference the allegations of Count One of this Superseding Indictment.

      2.      On or about May 5, 2009, in the District of North Dakota, and elsewhere, in a matter within the jurisdiction of the RMA, an agency of the United States,

DEREK MARTIN JOHNSON

knowingly made and caused to be made a material false, fictitious, and fraudulent statement and representation, to wit:  DEREK MARTIN JOHNSON falsely represented that his stored 2006 potato crop was damaged by natural causes and denied that he intentionally damaged his 2006 potato crop;

      In violation of Title 18, United States Code, Section 1001.

18

## COUNT SIX

**False Statement to Law Enforcement**

The Grand Jury Further Charges:

1.      The Grand Jury realleges and incorporates by reference the allegations of Count One of this Superseding Indictment.

2.      On or about January 20, 2010, in the District of North Dakota, and elsewhere, in a matter within the jurisdiction of the RMA, and the FSA, agencies of the United States,

### AARON SCOTT JOHNSON

knowingly made and caused to be made a material false, fictitious, and fraudulent statement and representation, to wit:  AARON SCOTT JOHNSON falsely represented that his stored 2006 potato crop was damaged by natural causes and denied that he intentionally damaged his 2006 potato crop;

In violation of Title 18, United States Code, Section 1001.

## FORFEITURE ALLEGATION

The Grand Jury Further Finds Probable Cause That:

The felony offenses alleged in Counts One, Two, and Three of this Superseding Indictment, punishable by imprisonment for more than one year, are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(A).

Upon conviction of this Superseding Indictment,

AARON SCOTT JOHNSON;
DEREK MARTIN JOHNSON; and
JOHNSON POTATO COMPANY

shall forfeit to the United States, pursuant 18 U.S.C. § 982(a)(2)(A), all right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of 18 U.S.C. § 1014.

If any of the assets described above as being subject to forfeiture, pursuant to 18 U.S.C. § 1955(d), as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by

20

28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of said property described above as being subject to forfeiture.

A TRUE BILL:


__/s/ Foreperson_____
FOREPERSON


_/s/ Timothy Q. Purdon_____
TIMOTHY Q. PURDON
United States Attorney


NWC:tla